UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                  :

**OHIO SECURITY INSURANCE COMPANY**
and **THE OHIO CASUALTY INSURANCE**
**COMPANY**,
                                  :

                    Plaintiffs,    :    **MEMORANDUM DECISION AND**
                                  **ORDER**
       – against –           :
                                  :    24-CV-3422 (AMD) (CLP)

**ADA ISLAND CONSTRUCTION CORP.**, *d/b/a*
*ADA Island Construction Group*, **ISLAND**
**CONSTRUCTION CORP.** *d/b/a ADA Island*
*Construction Group*, **WILSON MOROCHO** *d/b/a*
*ADA Island Construction Group*, **SZO**
**CONSTRUCTION GROUP INC.,**
**INTERNATIONAL CONCRETE CORP, ESTY**
**GOLDMAN, JOEL HIRSCHFELD,** and
**HIRSCHFELD & ASSOCIATES CORP.**,

                  Defendants.    :
------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

      The plaintiffs Ohio Security Insurance Company ("Ohio Security") and The Ohio

Casualty Insurance Company ("Ohio Casualty") bring this action against the defendants ADA

Island Construction Corp. d/b/a ADA Island Construction Group ("ADA Island Construction"),

Island Construction Corp. d/b/a ADA Island Construction Group ("Island Construction"), Wilson

Mo Rocho d/b/a ADA Island Construction Group ("Morocho"), SZO Construction Group Inc.

("SZO"), International Concrete Corp. ("ICC"), Esty Goldman ("Esty"), Joel Hirschfeld ("Joel"),

and Hirschfeld & Associates Corp. ("Hirschfeld") seeking monetary and declaratory relief

related to coverage under the insurance policies at issue.

      Before the Court is a motion to intervene, filed by United Specialty Insurance Company

("USIC") and State National Insurance Company ("SNIC," and collectively, the "intervenors")

for intervention as of right under Federal Rule of Civil Procedure 24(a) or, alternatively, permissive intervention under Federal Rule of Civil Procedure 24(b). For the reasons explained below, permissive intervention is granted pursuant to Federal Rule of Civil Procedure 24(b).

## BACKGROUND

### I.    The Parties

The plaintiffs Ohio Security and Ohio Casualty are insurance companies based in Massachusetts that conduct business in New York. (ECF No. 1 ¶¶ 2–5.) The defendants ADA Island Construction, Island Construction, Morocho, SZO, and ICC are engaged in the construction business in New York. (*Id.* ¶¶ 7, 10, 13, 15, 17.) The defendant Hirschfeld is an insurance company that has a Property and Casualty Broker's license and a Property and Casualty Agent's license with the State of New York. (*Id.* ¶¶ 24–25.) The defendants Esty and Joel are employees of Hirschfeld; Joel is the principal broker and has a Property and Casualty Broker's license and a Property and Casualty Agent's license with the State of New York, and Esty does not have any insurance licenses with the State of New York. (*Id.* ¶¶ 18–22.) The intervenors are also insurance companies that conduct business in New York and that provide insurance coverage for non-parties Tov Erasmus LLC ("Tov"), JIH Builders Group LLC ("JIH"), Empire State Dairy LLC ("ESD"), and Bushburg Builders LLC ("Bushburg"). (ECF No. 20-2 ¶¶ 114, 119–22.)

### II.    The Underlying Actions

This action relates to defense and indemnity coverage in personal injury actions, described below, in New York state court.[1]

---

[1] The complaint lists additional underlying actions that the intervenors do not mention in their motion. (*See* ECF No. 1 ¶¶ 42–45 (the "Barzallo Action"), ¶¶ 46–49 (the "Delgado Action"), ¶¶ 56–59 (the "Martinez Action"), ¶¶ 63–66 (the "Lira Action"), ¶¶ 67–68 (the "Lira Coverage Action"), ¶¶ 69–72 (the "Polonia Action").)

### a.   The Huaman Action

On November 4, 2022, Isabel Huaman brought an action in New York Supreme Court, Kings County against Tov, JIH, and Yatziv Corp., alleging that she was injured on September 29, 2022 while working on a construction project at 150 Erasmus Street in Brooklyn.  (ECF No. 1 ¶¶ 52–53; ECF No. 20-8 at 9.)  On April 27 and August 11, 2023, Tov and JIH filed third-party complaints against ICC and SZO, respectively, alleging that ICC and SZO contracted to perform work at the construction site and pursuant to those contracts, were "obligated to supervise, direct and control the work under the contract" and "responsible for safety precautions."  (ECF No. 20-8 at 9–10; *see also* ECF No. 1 ¶¶ 54– 55.)  On November 10, 2023, Huaman filed a Motion for Default against Yatziv Corp., which was granted on March 14, 2024.  (ECF No. 20-8 at 10.)

### b.   The Santos Action

On November 8, 2022, Eder Santos brought an action in New York Supreme Court, Kings County against Tov and Yatziv Corp., alleging that he was injured on September 20, 2022[2] while working on a construction project at 150 Erasmus Street in Brooklyn.  (ECF No. 1 ¶¶ 60–61; ECF No. 20-8 at 10.)  On October 17, 2023, Tov filed a third-party complaint against ICC, alleging that ICC contracted to "work at the [] construction site and that pursuant to that contract [] was obligated to supervise, direct and control the work under the contract and was responsible for safety precautions."  (ECF No. 20-8 at 10; *see also* ECF No. 1 ¶ 62.)

### c.   The Boissiere Action

On March 21, 2023, Dionne Bossiere brought an action in New York Supreme Court, Kings County, against ESD, Bushburg, Bushburg Properties LLC, ICC, Taylor Shondell and

---

[2] The complaint in this case alleges that Santos was injured on September 22, 2022, but according to the complaint in the Santos action, Santos was injured on September 20, 2022.  (*See* ECF No. 19-15 at ¶¶ 9– 10.)

Safiya Baptiste, alleging that he was injured on August 18, 2022 while doing construction work at 2840 Atlantic Avenue in Brooklyn. (ECF No. 1 ¶¶ 50–51; ECF No. 20-8 at 10–11.) On July 7, 2023, ESD and Bushburg filed an answer denying the allegations, and asserted a cross claim against ICC for common law and contractual indemnification and contribution. (ECF No. 20-8 at 11.)

## III. The Policies

### a. The Ohio Security Policy

Ohio Security issued Commercial General Liability Policy No. BKS (23) 64 98 09 70 to ADA Island Construction Group ("ADA"), as the sole named insured, with a policy period of July 18, 2022 to July 18, 2023. (ECF No. 1 ¶ 27.) The policy listed a single location for the named insured — 204 N. 9th Street, Apt. 3, Newark, New Jersey 07107-1786 — and Ohio Security issued the policy with premiums based on the risks associated with ADA. (*Id.* ¶¶ 28–29.)

On November 25, 2022, Esty, "acting on behalf of, and under the instructions and/or supervision of Joel and Hirschfeld," sent a written request to Ohio Security that said: "Please add effective August 15th the additional named insureds: SZO Construction Group Inc. and International Concrete Corp. The above is same owner and exposures." (*Id.* ¶ 30.) Based on that representation, Ohio Security issued Policy Change Endorsement, Transaction # 4, which added SZO and ICC to the Ohio Security Policy as named insureds for the endorsement period of August 15, 2022 to July 18, 2023, but did not add any new locations or additional premiums. (*Id.* ¶¶ 32–33.) Ohio Security then issued Policy Change Endorsement, Transaction # 19, which deleted SZO and ICC as named insured on the Ohio Security Policy, effective November 2, 2022. (*Id.* ¶ 34.) The intervenors allege that SZO and ICC were therefore "Named Insureds on

4

the Ohio Security Policy on the August 18, 2022, September 20, 2022 and September 29, 2022

dates of loss at issue in the Underlying Actions."  (ECF No. 20-8 at 12.)

The Ohio Security Policy includes a Commercial General Liability Extension

endorsement, which has the following provision about the policy's coverage:

> **G. ADDITIONAL INSUREDS - BY CONTRACT, AGREEMENT OR PERMIT**
>
> 1. Paragraph **2.** under **Section II – Who Is An Insured** is amended to include as an insured any person or organization whom you have agreed to add as an additional insured in a written contract, written agreement or permit. Such person or organization is an additional insured but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused in whole or in part by:
>
>> a. Your acts or omissions, or the acts or omissions of those acting on your behalf, in the performance of your on going operations for the additional insured that are the subject of the written contract or written agreement provided that the "bodily injury" or "property damage" occurs, or the "personal and advertising injury" is committed, subsequent to the signing of such written contract or written agreement. . . .

(ECF No. 20-8 at 12–13.)  The Commercial General Liability Extension endorsement also

contains the following provision about the policy's coverage:

> **H. PRIMARY AND NON-CONTRIBUTORY ADDITIONAL INSURED EXTENSION**
>
> This provision applies to any person or organization who qualifies as an additional insured under any form or endorsement under this policy.
>
> Condition **4. Other Insurance of SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS** is amended as follows:
>
> **a.** The following is added to Paragraph **a. Primary Insurance**:
>
>> If an additional insured's policy has an Other Insurance provision making its policy excess, and you have agreed in a written contract or written agreement to provide the additional insured coverage on a primary and noncontributory

basis, this policy shall be primary and we will not seek contribution from the additional insured's policy for damages we cover.

(ECF No. 20-8 at 13.)

**b. The Ohio Casualty Policy**

Ohio Casualty issued Commercial Umbrella Policy No. USO (23) 64 98 09 70 to ADA, as the sole named insured, with a policy period of July 18, 2022 to July 18, 2023.  (ECF No. 1 ¶ 35.)  The Ohio Security policy is included on the Ohio Casualty policy's "Schedule of Underlying Insurance."  (*Id.* ¶ 36.)  Based on the coverage request, Ohio Casualty issued Policy Change Endorsement, Transaction # 2, which added SZO and ICC to the Ohio Casualty policy as named insureds for the endorsement period of August 15, 2022 to July 18, 2023, but did not add additional premiums.  (*Id.* ¶ 38–39.)  Ohio Casualty then issued Policy Change Endorsement, Transaction # 9, which deleted SZO and ICC as named insured on the Ohio Casualty policy,[3] effective November 2, 2022.  (*Id.* ¶ 40.)

The Ohio Casualty policy has the following coverage:

**SECTION II – WHO IS AN INSURED**

**5.** Each of the following is also an insured:

**b.** Any person or organization, other than the "named insured", who qualifies as an additional insured in the "underlying insurance". However, coverage under this policy will be no broader than that provided by "underlying insurance". The insurance afforded to such additional insured only applies to the extent permitted by law and the amount we will pay for damages is limited as described in **Section III – Limits Of Insurance**.

\*\*\*

**AMENDMENT OF DEFINITION OF INSURED**

---

[3] The complaint alleges incorrectly that Policy Change Endorsement, Transaction # 9, deleted SZO and ICC as named insured on the Ohio Security policy.  (*See* ECF No. 19-3 at 14 (Policy Change Endorsement, Transaction # 9, changing coverage with respect to the Ohio Casualty Policy, No. USO (23) 64 98 09 70).)

Paragraph **F.5.** under **SECTION V. DEFINITIONS** is replaced by the following:

**5.** Any person or organization who qualifies as an insured in the "underlying insurance" and does not qualify as an "insured" in paragraphs **1., 2., 3., 4., 6., 7.,** or **8.** of this definition **F.,** but not beyond the extent of any limitation imposed under any contract or agreement.

(ECF No. 20-8 at 14.)

The Ohio Casualty policy also includes the following condition:

**6. Concealment, Misrepresentation Or Fraud**

We may void this policy or deny a claim at any time if, before or after a loss, you:
a.  Concealed or misrepresented any material fact or circumstance;
b.  Made incorrect statements or representations to us with regard to any material fact or circumstance; or
c.  Engaged in fraudulent conduct;
at the time of application or any time during the "policy period".

(ECF No. 1 ¶ 37.)

### c.  The Intervenors' Policies

USIC issued Policy No. PSS2201570 to Tov and JIH, with a policy period of March 24, 2022 to September 24, 2024, or until end of the project, whichever came first.  (ECF No. 20-8 at 15.)  USIC is defending Tov and JIH in the Huaman action and is defending Tov in the Santos action.  (*Id*.)

SNIC issued Policy No. PSI2100312 to ESD, Bushburg and others, with a policy period of November 30, 2022 to November 30, 2024, or until end of the project, whichever came first. (*Id.*)  SNIC is defending ESD and Bushburg in the Boissiere action.  (*Id.*)

## IV.    The Contracts

The intervenors allege that on April 27, 2022, JIH hired ICC to perform work at 150 Erasmus Street.  (*Id.* at 11.)  The parties signed an agreement that described the work as "Excavation/Foundation/Superstructure" and required that "ICC procure insurance naming the

General Contractor (JIH) and the Owner (TOV) as additional insureds" and "sign a hold

harmless agreement." (*Id.*)[4]

ICC (as the subcontractor), TOV (as the owner), and JIH (as the general contractor) also

executed a subcontract agreement that lists the job location as 150-154 Erasmus Street. (*Id.*)

The subcontract includes indemnification and insurance provisions, and TOV and JIH are

included on the "List of Indemnified Parties and Additional Insureds." (*Id.*)  Pursuant to the

indemnification provision, ICC "agreed to defend, indemnify and hold harmless TOV and JIH,"

and pursuant to the insurance provisions, ICC "agreed to procure and maintain primary and

excess/umbrella general liability insurance policies naming TOV and JIH as additional insureds

on a primary and non-contributory basis." (*Id.*)

The intervenors allege "upon information and belief" that Bushburg also entered into a

subcontract with ICC for services at the 2840 Atlantic Avenue project; the subcontract requires

ICC "to procure additional insured coverage for and defend and indemnify ESD and Bushburg

on a primary and non-contributory basis." (*Id.* at 12.)

## V.    The Tenders and Responses

### a.  The Huaman Action

On January 20, 2023, National Claim Services ("NCS"), on behalf of USIC, tendered the

defense and indemnification of Tov and JIH for the Huaman action to ICC and the plaintiffs

based on Tov and JIH's "status as contractual indemnities and additional insureds" under the

subcontract. (*Id.* at 15.)  On March 2, 2023, the plaintiffs acknowledged receipt of the tender

but, according to the intervenors, "disclaimed and denied any duty to defend or indemnify either

---

[4] The intervenors include contracts with their motion. (*See* ECF No. 20-3.)

party on the basis that they do not qualify as a named insured or additional insureds under the Plaintiffs' Policies." (*Id.*)

On December 27, 2023, USIC tendered the defense and indemnification of Tov and JIH to SZO and the plaintiffs for the Huaman action, "on the basis that the claimant was injured while working in the course of their employment with SZO and that SZO entered into a contract which required it to defend and indemnify Tov and JIH and name them as additional insureds." (*Id.*) On January 8, 2024, the plaintiffs acknowledged receipt of the tender. (*Id.* at 16.) According to the intervenors, the plaintiffs stated that they were "in the process of investigating coverage pursuant to a full reservation of rights" and requested additional information from Tov and JIH. (*Id.*)

On April 1, 2024, USIC made another request for defense and indemnification for Tov and JIH and asked the plaintiffs to reconsider their initial denial of coverage. (*Id.*) On April 15, 2024, the plaintiffs responded, "disclaiming coverage and denying any duty to defend or indemnify either party" because "SZO and ICC were not Named Insureds under the Liberty Mutual Policies, pursuant to the known loss doctrine" and because they did not qualify as additional insureds. (*Id.*)

### b. The Santos Action

On June 8, 2023, the defense counsel USIC assigned to defend Tov in the Santos action tendered the defense and indemnification of Tov for the Santos action to ICC and the plaintiffs, based on Tov's "status as a contractual indemnitee and additional insured" under the subcontract. (*Id.*) On July 6, 2023, the plaintiffs acknowledged receipt of the tender, but according to the intervenors, they "disclaimed and denied any duty to defend or indemnify Tov on the basis that they do not qualify as a named insured or additional insureds under the Plaintiffs' Policies." (*Id.*)

In a January 8, 2024 letter, the plaintiffs offered to provide a "courtesy defense" to ICC in the Santos action, but did not extend the same offer to Tov. (*Id.*) On January 24, 2024, NCS, on behalf of USIC and Tov, asked the plaintiffs about the offer. (*Id.*) The plaintiffs responded that they were not providing a defense to ICC, because ICC did not respond to the plaintiffs' January 8, 2024 letter. (*Id.* at 16–17.) NCS, on behalf of USIC and Tov, asked the plaintiffs again to defend Tov in the Santos action, but the plaintiffs did not respond. (*Id.* at 17.)

### c. The Boissiere Action

The intervenors argue "[u]pon information and belief" that ESD and Bushburg's defense counsel, on behalf of ESD and Bushburg, tendered to the plaintiffs for additional coverage, defense and indemnification for the Boissiere action.

## VI. This Action

The plaintiffs brought this action against the defendants on May 9, 2024. (ECF No. 1.) The plaintiffs allege that contrary to what Esty, Joel and Hirschfeld said in the coverage request, SZO and ICC did not have the same owner and exposures as ADA. (*Id.* ¶ 31.) They allege that they would not have added SZO and ICC as named insureds to the Ohio Security policy and the Ohio Casualty policy if they had known the truth. (*Id.* ¶ 41.) They also allege that the defendants did not advise them when they asked the plaintiffs to add ICC and SZO to the Ohio Security policy and Ohio Casualty policy that there were pending claims against SZO and ICC, and claims by other entities that were additional insured based on agreements with SZO and ICC. (*Id.* ¶¶ 76, 85.) They claim that the defendants knew that the representations were false and knew or should have known that it was improper to seek to add SZO and ICC as additional named insureds on other, unrelated companies' policies. (*Id.* ¶¶ 77, 79, 86–90.) In addition, they maintain that the defendants allowed liability coverage for SZO and ICC under a different

insurer to lapse, and they schemed to get the plaintiffs to cover them to fill a gap in coverage. (*Id.* ¶¶ 80, 89.)

The plaintiffs seek monetary damages, including for the expenses the plaintiffs incurred in the defenses of ICC and SZO in the underlying actions and in responding to claims for coverage for ICC, SZO, and their purported additional insureds in the underlying actions. (*Id.* ¶ 93.) The plaintiffs also seek declaratory judgment as to the defendants' responsibilities for any continuing damages; specifically, that the defendants are responsible for reimbursing the plaintiffs for the defense of ICC and SZO in the underlying actions, and for responding to actions asserting claims for coverage for ICC, SZO, and the purported additional insureds in connection with the underlying actions. (*Id.* ¶ 98.) The plaintiffs also seek a declaration that they have no obligation to defend or indemnify SZO and ICC for the underlying actions or any other actions brought pursuant to the Ohio Security policy and Ohio Casualty policy. (*Id.* ¶ 102.)

The defendants did not appear or otherwise defend the action, and on July 26, 2024, the plaintiffs requested a certificate of default against the defendants pursuant to Federal Rule of Civil Procedure 55(a). (ECF No. 15.) On July 31, 2024, the Clerk of Court entered default. (ECF No. 17.) On November 8, 2024, the plaintiffs filed a motion for default judgment (ECF No. 19), which is still pending.

## VII.    The Motion to Intervene

On December 14, 2024, the intervenors filed a motion to intervene. (ECF No. 20.) They argue that they seek to resolve the same issue the plaintiffs raise in their complaint — "whether Plaintiffs should be relieved of their obligations to provide coverage to their Named Insureds and their putative additional insureds." (ECF No. 20-8 at 6.) The intervenors oppose the plaintiffs' "efforts to rescind the Policy Change Endorsements adding SZO and ICC as additional Named Insureds on their Policies" and seek, among other things, (1) a declaratory judgment that the

plaintiffs are required to provide defense and indemnity coverage to Tov, JIH, ESD, and Bushburg as additional insureds for the Huaman, Santos, and Boissiere actions and (2) reimbursement for the defense fees and costs incurred on behalf of Tov, JIH, ESD, and Bushburg in the relevant underlying actions.  (ECF No. 20-8 at 6–7.)

On January 10, 2025, the plaintiffs opposed the intervenors' motion.  (ECF No. 22.) They argue that the intervenors mischaracterize their claim as one for rescission of the policies; in fact, they say, they are seeking damages based on "the misrepresentation made to induce [the plaintiffs] to issue [their] policies" and a declaratory judgment against ICC and SZO "only based on breach of a policy condition."  (*Id.* at 4.)  In addition, they assert that they are not seeking "any determination that SZO and ICC are not Named Insureds."  (*Id.* at 5.)  The intervenors, on the other hand, seek coverage for Tov, JIH, ESD, and Bushburg as additional insureds under Ohio's policies, and "[a]ny alleged right to insurance coverage for TOV, JIH, ESD, and Bushburg are not at issue in this action; and it will not be affected in any manner if a default judgment is granted."  (*Id.* at 6–7.)

The intervenors dispute the plaintiffs' claim that they are not seeking to remove SZO and ICC as named insureds but are only seeking relief based on a policy condition; according to the intervenors, if the plaintiffs can establish that SZO and ICC do not owe coverage based on a policy condition, it is illogical to argue that SZO and ICC would have continuing obligations as named insureds.  (ECF No 23-5 at 4.)  In addition, the intervenors maintain that the plaintiffs told them that they would seek recission in this action, and that their choice not to do so "is a blatant attempt to obscure the true nature of this action and to obtain a declaration of no coverage without alerting their putative additional insureds."  (*Id.* at 5.)[5]

---

[5] The intervenors filed exhibits with their reply memorandum in support of this argument.  (*See* ECF Nos. 23-1, 23-2, 23-3, 23-4.)

The Court heard oral argument on July 22, 2025, and directed the parties to advise the Court by letter if they could resolve their differences; the parties advised the Court on August 5, 2025, that they could not.  (ECF No. 25.)

## LEGAL STANDARD

A court may grant a request to intervene in a civil action as of right or permissively.  Fed. R. Civ. P. 24.  "In considering a motion to intervene, the court must accept as true non-conclusory allegations of the motion."  *Berroyer v. United States*, 282 F.R.D. 299, 303 (E.D.N.Y. 2012) (citing *Oneida Indian Nation of Wisc. v. New York*, 732 F.2d 261, 265 (2d Cir. 1984)).

## DISCUSSION

### I.    Intervention as of Right

Under Federal Rule of Civil Procedure 24(a)(2), parties may intervene as of right if they "(1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action."  *New York News, Inc. v. Kheel*, 972 F.2d 482, 485 (2d Cir. 1992).  "Failure to satisfy *any one* of these [four] requirements is a sufficient ground to deny the application."  *R Best Produce, Inc. v. Shulman–Rabin Mktg. Corp.*, 467 F.3d 238, 241 (2d Cir. 2006) (citation omitted) (emphasis in original).

### a.    Timeliness

Whether a motion for intervention is timely is a decision "entrusted to the district judge's sound discretion."  *Sec. & Exch. Comm'n v. Xia*, No. 21-CV-5350, 2024 WL 964676, at *6 (E.D.N.Y. Mar. 4, 2024) (quoting *United States v. Yonkers Bd. of Educ.*, 801 F.2d 593, 594–95 (2d Cir. 1986)).  The Second Circuit has established factors for a district court to consider in determining timeliness, including "(a) the length of time the applicant knew or should have

13

known of his interest before making the motion; (b) prejudice to existing parties resulting from the applicant's delay; (c) prejudice to [the] applicant if the motion is denied; and (d) presence of unusual circumstances militating for or against a finding of timeliness." *Hartford Fire Ins. Co. v. Mitlof*, 193 F.R.D. 154, 159 (S.D.N.Y. 2000) (quoting *United States v. New York,* 820 F.2d 554, 557 (2d Cir. 1987)).  The timeliness assessment must be "evaluated against the totality of the circumstances before the court." *Pawelsky v. Cnty. of Nassau, New York*, 684 F. Supp. 3d 73, 88 (E.D.N.Y. 2023) (quoting *D'amato v. Deutsche Bank*, 236 F.3d 78, 84 (2d Cir. 2001)).

The intervenors' motion is timely.  As an initial matter, the fact that intervenors filed their motion seven months after the complaint was filed does not, without more, make the motion untimely. *See Republic of the Philippines v. Abaya*, 312 F.R.D. 119, 123 (S.D.N.Y. 2015) ("Although [the intervenors] waited nearly a year to intervene in the action, this delay does not automatically foreclose the instant motion.").  The circumstances in this case establish, for purposes of this motion, that the intervenors filed their motion as soon as they found out about this action; they represent that they learned of this action in December 2024, after counsel did an online search.  (ECF No. 20-8 at 19.)[6]  The plaintiffs do not explain how the intervenors could have learned about this action earlier than they did.

Nor would granting the motion prejudice the existing parties.  The plaintiffs' argument that "it would unduly prejudice [them] to delay the grant of a default judgment" (ECF No. 22 at 7) is not persuasive.  Because of the "strong public policy preference for resolving disputes on the merits, rather than by default judgments," the Court "does not find [the] [m]otion untimely simply because [the] Defendants have defaulted." *Nat'l Fire Ins. Co. of Hartford v. Starbro*

---

[6] The plaintiffs argue that the intervenors "provide no affidavits or declarations supporting their delay." (ECF No. 22 at 7.)  However, the Court "accept[s] as true" the "non-conclusory allegation[]" that the intervenors learned of the action in December 2024. *Berroyer*, 282 F.R.D. at 303.

*Const. Corp.*, No. 8-CV-3200, 2009 WL 2602281, at *3 (E.D.N.Y. Aug. 24, 2009); *see also id.*

("Plaintiffs 'can hardly be said to be prejudiced by having to prove a lawsuit [they] chose to

initiate.'") (quoting *Sec. Ins. Co. of Hartford v. Schipporeit, Inc.,* 69 F.3d 1377, 1381 (7th Cir.

1995)).  The plaintiffs' motion for default judgment is pending, and the Court has not made any

determination on the merits.

The plaintiffs also claim that they will be prejudiced because they will not know their

defense and indemnification obligations for the underlying actions.  (ECF No. 22 at 11.)  This

claim is also meritless.  Indeed, if the intervenors brought a separate action, as the plaintiffs

suggest (*see id.*), the plaintiffs would still not know what their coverage obligations would be in

the underlying actions until that action is resolved.

### b.  Interest in the Action

 An interest is cognizable under Rule 24(a)(2) if it is "direct, substantial, and legally

protectable."  *Bridgeport Guardians, Inc. v. Delmonte*, 602 F.3d 469, 473 (2d Cir. 2010)

(quoting *Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.,* 922 F.2d 92, 97 (2d Cir.

1990)).  "An interest that is remote from the subject matter of the proceeding, or that is

contingent upon the occurrence of a sequence of events before it becomes colorable, will not

satisfy the rule."  *Med. Diagnostic Imaging, PLLC v. CareCore Nat., LLC*, 542 F. Supp. 2d 296,

304 (S.D.N.Y. 2008) (quoting *Washington Elec. Co-op., Inc. v. Massachusetts Mun. Wholesale

Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990)).  Intervention "cannot be used as a means to inject

collateral issues into an existing action."  *Kheel*, 972 F.2d at 486 (quoting *Washington Elec.*, 922

F.2d at 97).

Whether the intervenors have a "direct, substantial, and legally protectable" interest in

this action is a closer question.  They argue that they have an interest because the plaintiffs seek

"a declaratory judgment regarding their coverage obligation for coverage for SZO and ICC, the

outcome of which will directly impact intervenors as they have demonstrated their insureds, TOV, JIH, ESD and Bushburg, are Additional Insureds under the Plaintiffs' Policies." (ECF No. 20-8 at 21.) Moreover, they say that because of the language in the plaintiffs' policies, their insureds' status as additional insureds "depends wholly on the determination of whether ICC is a Named Insured thereunder." (*Id.* at 22.) According to the intervenors, they have a direct interest "in ensuring that SZO and ICC have insurance coverage available to satisfy any judgment that TOV, JIH, ESD or Bushburg may obtain against SZO and ICC on their common law and contractual indemnification and contribution claims in the Underlying Actions." (ECF No. 23-5 at 10.)

The plaintiffs respond that their action is narrower; that they do not seek "any determination that SZO and ICC are not Named Insureds or to rescind the policies." (ECF No. 22 at 5.) Instead, they seek declaratory relief for their coverage obligations to ICC and SZO, based on their fraud claim. (*Id.* at 5–6.) They argue that the breach of the "Concealment, Misrepresentation Or Fraud" provision of the policies has no effect on any other insureds' entitlement to coverage, in part because the plaintiffs' policies contain "Separation of Insureds" provisions. (ECF No. 22 at 10, 10–11 n.1.) In the plaintiff's telling, the intervenors are trying to create a "whole new lawsuit" with claims that are different than the plaintiffs' claims. (ECF No. 22 at 9 (quoting *NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 490 (S.D.N.Y. 1998)).)

The intervenors, in turn, say that if the plaintiffs can establish that they do not owe coverage to SZO and ICC because the defendants breached a policy condition, they could not owe coverage to third parties that SZO and ICC were contractually obligated to add as additional insureds to the plaintiffs' policies. (ECF No. 23-5 at 4.) The intervenors point out that the plaintiffs have already denied additional insured coverage based on the premise that ICC and

16

SZO are not named insured on their policies.  (*Id.* at 8–9.)  According to them, the plaintiffs "seek to wash their hands completely of any obligation . . . to provide additional insured coverage for any party who contracted with ICC or SZO" because they seek relief not only for the underlying actions, but for any other action as well.  (*Id.* at 9.)[7]

The Court finds that the intervenors' interest is not sufficiently "direct, substantial, and legally protectable" to warrant intervention as of right under Federal Rule of Civil Procedure 24(a)(2).  The plaintiffs seek relief against ICC, SZO and others based on the "Concealment, Misrepresentation Or Fraud" provisions in their policies.  (ECF No. 22 at 6.)  The intervenors' interest, on the other hand, is based on contractual obligations between ICC and the intervenors' insureds.  The plaintiffs note that their policies also contain "Separation of Insureds" provisions, which may allow the intervenors to recover against the plaintiffs regardless of what the Court finds as to ICC and SZO.  (*Id.* at 10, 10–11 n.1.)  The intervenors' interest is not automatically implicated by the plaintiffs' claims, because even if the Court were to find that the plaintiffs do not owe coverage to ICC, a court could nevertheless find that the plaintiffs still owe coverage to the intervenors' insureds through either the contracts or the Separation of Insureds provisions. The intervenors claim that they have a secondary interest in "ensuring that SZO and ICC have insurance coverage available to satisfy any judgment that TOV, JIH, ESD or Bushburg may

---

[7] The plaintiffs assert that this argument is "new," and that the Court should not consider it or other arguments they say that the intervenors raised for the first time in their reply brief.  (ECF No. 24.)  In the Court's view, it is appropriate to consider the intervenors arguments, because they are responsive to the plaintiff's opposition.  *See Alvarez v. Experian Info. Sols., Inc.*, 661 F. Supp. 3d 18, 23 (E.D.N.Y. 2023) ("It is well-established that arguments may not be made for the first time in a reply brief . . . But that rule enjoys an exception — reply papers may properly address new material issues raised in the opposition papers so as to avoid giving unfair advantage to the answering party." (cleaned up)). Regardless, the plaintiffs had the opportunity to respond to these arguments at oral argument.  *See In re Various Grand Jury Subpoenas*, 235 F. Supp. 3d 472, 485 (S.D.N.Y. 2017) (courts do not consider issues initially raised in reply "because if a party raises a new argument in a reply brief the opposing party may not have an adequate opportunity to respond to it.").

obtain against SZO and ICC on their common law and contractual indemnification and contribution claims in the Underlying Actions." (ECF No. 23-5 at 5.) However, the intervenors proposed counterclaims seek declaratory relief only as to the plaintiffs' coverage obligations, not ICC or SZO's. (ECF 20-2 at 28–29.)

The intervenors' coverage obligations for their insureds are therefore not "necessarily [] shaped" by the Court's determination in this action. *Certified Multi-Media Sols., Ltd. v. Preferred Contractors Ins. Co. Risk Retention Grp. LLC*, No. 14-CV-5227, 2015 WL 5676786, at *10 (E.D.N.Y. Sept. 24, 2015); *see also id.* ("Travelers is an insurer of Getronics whose own continued coverage obligations will necessarily be shaped by the Court's determination of PCIC's obligations in this action."); *Golden Ins. Co. v. PCF State Restorations, Inc.*, No. 17-CV-5390, 2018 WL 10593630, at *6 (S.D.N.Y. May 11, 2018) ("Federal's coverage obligations in the Yamba Action will necessarily be shaped by the outcome of the pending declaratory judgment action."). Because the plaintiffs could get relief in the form of a default judgment, the intervenors would also not be precluded from raising similar issues in another case. *See In re Adler, Coleman Clearing Corp.*, 205 F. App'x 856, 857 (2d Cir. 2006) ("[T]he general rule is well-established that default judgments lack issue-preclusive effect.").

Accordingly, the Court finds that the intervenors cannot intervene as of right under Federal Rule of Civil Procedure 24(a)(2). Given this conclusion, the Court does not address the remaining factors. *See Disability Advocs., Inc. v. Paterson*, No. 03-CV-3209, 2009 WL 5185807, at *2 (E.D.N.Y. Dec. 23, 2009) ("Failure to satisfy even one of the four requirements will defeat a claim to intervention as of right." (citing *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 176 (2d Cir.2001))).

## II.    Permissive Intervention

Permissive intervention is "within the court's broad discretion."  *Dorsett v. Cnty. of Nassau*, 289 F.R.D. 54, 70 (E.D.N.Y. 2012).  Under Rule 24(b), the court may permit intervention for a party who makes a "timely motion" and "has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B).  "Courts typically consider the same four factors to determine permissive intervention as they would for mandatory intervention" but in the context of permissive intervention "district courts in the Second Circuit have recognized that the four factors should be considered as a whole, rather than focusing narrowly on any one of the criteria, and that application of the factors is flexible and discretionary."  *Granite State Ins. Co. v. KM Tactical, LLC*, No. 23-CIV-7769, 2025 WL 1502019, at *4 (S.D.N.Y. May 27, 2025) (citations omitted).  "The principal guide in deciding whether to grant permissive intervention is 'whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.'"  *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 73 (2d Cir. 1994) (quoting Fed. R. Civ. P. 24(b)(3)).  In insurance disputes, "[c]ourts have repeatedly permitted insurers to intervene under Rule 24(b) — even where they were not entitled to intervene as of right under Rule 24(a) — to facilitate the resolution in a single forum of insurance coverage disputes involving a common question of law or fact."  *Granite State Ins. Co.*, 2025 WL 1502019, at *7 (collecting cases).

As explained above, the intervenors' motion is timely and granting intervention will not "prejudice the adjudication of the rights of the original parties."  *Pitney Bowes, Inc.*, 25 F.3d at 73.  The intervenors filed their motion shortly after they learned of this action, and only one other motion has been filed: the plaintiffs' pending motion for default judgment.  Moreover, the intervenors' proposed counterclaims include questions of law and fact common to the current action.  Both the plaintiffs and the intervenors seek declarations about the plaintiffs' coverage

obligations under the same policies in the same underlying actions.  It is true that the intervenors could bring a separate action to determine whether the plaintiffs owe coverage to the intervenors' insureds, even if there were a default judgment that they do not owe coverage obligations to ICC and SZO.  However, these issues can and should, as a matter of judicial efficiency, be resolved in a single action.  *See Granite State Ins. Co.*, 2025 WL 1502019, at *8 ("Any conceivable prejudice is outweighed by the strong interests of the parties and the judicial system in the efficient resolution of both disputes in the same forum.").

The third and fourth factors — whether the intervenors' interest may be impaired by the disposition of the action and is not protected adequately by the parties to the action — also weigh in favor of granting intervention under Federal Rule of Civil Procedure 24(b).  While the proposed counterclaims are not necessarily implicated by the plaintiffs' claims, a declaration that the plaintiffs do not owe coverage obligations to ICC and SZO may impair the intervenors' ability to recover for their insureds based on the contracts with ICC.  Indeed, the plaintiffs have already denied additional insured coverage to the intervenors' insureds on the premise that ICC and SZO are not named insureds on their policies.  (ECF No. 20-8 at 15–17; ECF No. 23-5 at 8–9.)  The plaintiffs assert that they do not seek that kind of declaration, but could use a declaration that they do not owe coverage to ICC and SZO to deny coverage to the intervenors' insureds.

Finally, the intervenors' interests would not be protected adequately by the parties to the action.  The "bar for showing inadequate representation" can be satisfied "by the failure of the representative in the fulfillment of his duty."  *Harris-Clemons v. Charly Trademarks Ltd.,* 751 F. App'x 83, 85 (2d Cir. 2018) (citation omitted).  Because the defendants have defaulted and are thus not representing themselves in this action, they cannot adequately protect the intervenors' interests.  Even if the defendants did appear, the intervenors' insureds have asserted third-party

20

claims for indemnification and contribution against them in the underlying actions, which is sufficient "adversity of interest . . . to overcome the presumption of adequacy." *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 180 (2d Cir. 2001).

After careful consideration of the relevant Rule 24(b) factors, the Court in its discretion concludes that permissive intervention is warranted to facilitate an efficient resolution of common questions of law and fact. *See Granite State Ins. Co.*, 2025 WL 1502019, at *8.

## CONCLUSION

For these reasons, the motion to intervene is granted. The intervenors must file and effectuate personal service of the proposed answer and counterclaims within 10 days of the date of this order. The plaintiffs' pending motion for a default judgment against the defendants is dismissed with leave to renew.[8]


**SO ORDERED.**

s/Ann M. Donnelly

ANN M. DONNELLY
United States District Judge


Dated: Brooklyn, New York
      August 19, 2025

---

[8] The Court referred the plaintiff's motion for default judgment to Magistrate Judge Cheryl Pollak on November 12, 2024. (*See ECF Order dated Nov. 12, 2024.*) On August 18, 2025, Judge Pollak issued a Report and Recommendation ("R&R") recommending that the plaintiff's motion "be denied without prejudice and with leave to renew once the district court rules on the pending motion to intervene." (ECF No. 26 at 8.) In light of this decision, the R&R is moot. The motion for default judgment is dismissed with leave to renew, for substantially the same reasons explained in Judge Pollak's thorough R&R.