UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
OHIO SECURITY INSURANCE COMPANY and THE OHIO CASUALTY INSURANCE COMPANY,

Plaintiffs,

-against-

ADA ISLAND CONSTRUCTION CORP., d/b/a ADA ISLAND CONSTRUCTION GROUP, ISLAND CONSTRUCTION CORP. d/b/a ADA ISLAND CONSTRUCTION GROUP, WILSON MOROCHO d/b/a ADA ISLAND CONSTRUCTION GROUP, SZO CONSTRUCTION GROUP INC., INTERNATIONAL CONCRETE CORP., ESTY GOLDMAN, JOEL HIRSCHFELD, and HIRSCHFELD & ASSOCIATES CORP.

Defendants,

-and-

UNITED SPECIALTY INSURANCE COMPANY and STATE NATIONAL INSURANCE COMPANY

Defendants-Intervenors.
---------------------------------------------------------X

**REPORT AND RECOMMENDATION**
24 CV 3422 (AMD) (PCG)

**CROSS-GOLDENBERG**, United States Magistrate Judge:

On May 9, 2024, plaintiffs Ohio Security Insurance Company ("Ohio Security") and Ohio Casualty Insurance Company ("Ohio Casualty") (collectively "Plaintiffs") commenced this action against defendants ADA Island Construction Corp. d/b/a ADA Island Construction Group ("ADA Island Group"), Island Construction Corp. d/b/a ADA Island Construction Group ("Island Construction"), SZO Construction Group Inc. ("SZO"), International Concrete Corp. ("ICC"), Esty Goldman, Joel Hirschfeld, and Hirschfeld & Associates Corp., alleging fraud and seeking

damages and declaratory relief with respect to *inter alia* issues of coverage and the obligation to defend and indemnify under a Commercial General Liability policy issued by Ohio Security and a Commercial Umbrella policy issued by Ohio Casualty.[1] (See generally Dkt. No. 1 ("Compl."). On December 14, 2024, intervenors United Specialty Insurance Company ("USIC") and State National Insurance Company ("SNIC") intervened in this action to oppose Plaintiffs' efforts to rescind policy coverage over ICC and SZO. (See generally Dkt. No. 27-5 ("Mot. to Intervene").

Presently before the Court are Plaintiffs' Second Motion for Default Judgment and Motion to Sever, (Dkt. No. 35-16 ("Second Mot. for Default Judgment")), and Plaintiffs' Motion to Strike Defendants' opposition to Plaintiffs' Second Motion for Default Judgment, (Dkt. No. 41 ("Mot. to Strike")).

## BACKGROUND[2]

### I. Factual History

This action seeks to answer whether Plaintiffs, two insurance companies, have indemnity obligations to Defendants in several personal injury actions filed in New York state court in 2022 and 2023.

#### A. The Ohio Policies

According to the Complaint, Ohio Security issued a Commercial General Liability Policy (the "Ohio Security Policy" (Dkt. No. 19-2)) to ADA Island Group as the sole Named Insured. The Ohio Security Policy was issued with premiums determined based on risks associated with "ADA Island Construction Group." (Dkt. No. 26 ("R&R") at 2). The one-year policy period on

[1] Plaintiffs initially named Wilson Morocho d/b/a ADA Island Construction Group as a defendant. Morocho was the sole owner of defendant ADA Island Construction Group. (Dkt. No. 34-1 ¶ 11). He has no ownership interest in defendants ICC or SZO. (Id.) Plaintiffs were unable to locate and serve Morocho and therefore voluntarily dismissed the claims against him. (Id. ¶ 3).

[2] Unless otherwise noted, the Court gathers the following factual background from the Honorable Cheryl L. Pollak's well-reasoned Report and Recommendation recommending denial of Plaintiffs' first motion for default judgment. (Dkt. No. 26 ("R&R")).

the Ohio Security Policy began on July 18, 2022. (Id.) Ohio Casualty issued a Commercial Umbrella Policy (the "Ohio Casualty Policy" (Dkt. No. 19-3)) (collectively with the Ohio Security Policy, "the Ohio Policies") to ADA Island Group as the sole Named Insured with a one-year policy period beginning July 18, 2022. (Id.). The Ohio Security Policy was included in the Ohio Casualty Policy's Schedule of Underlying Insurance. (Id.).

The Ohio Security Policy provided an "Additional Insureds" provision, stating that:

> [The Ohio Security Policy] is amended to include as an insured any person or organization whom [the Named Insured] ha[s] agreed to add as an additional insured in a written contract, written agreement or permit. Such person or organization is an additional insured but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused in whole or in part by…[the Named Insured's] acts or omissions, or the acts or omissions of those acting on [the Named Insured's] behalf, in the performance of [the Named Insured's] on going operations for the additional insured that are the subject of the written contract or written agreement provided that the "bodily injury" or "property damage" occurs, or the "personal and advertising injury" is committed, subsequent to the signing of such written contract or written agreement[.]

(Ohio Security Policy at 157).

The Ohio Security Policy also included a "Primary and Non-Contributory Additional Insured Extension" provision which applied to any person or organization qualified as an additional insured under the policy. That provision states:

> If an additional insured's policy has an Other Insurance provision making its policy excess, and [the Named Insured has] agreed in a written contract or written agreement to provide the additional insured coverage on a primary and noncontributory basis, this policy shall be primary and [Ohio Security] will not seek contribution from the additional insured's policy for damages [Ohio Security] cover[s].

(Ohio Security Policy at 159).

The Ohio Casualty Policy included as an insured under the umbrella policy:

> Any person or organization…who qualifies as an additional insured in the underlying insurance. However, coverage under this policy will be no broader than that provided by underlying insurance. The insurance afforded to such additional insured only applies to the extent permitted by law and the amount we will pay for damages is limited…

(Ohio Casualty Policy at 116). And provides that:

> [Ohio Casualty] may void this policy or deny a claim at any time if, before or after a loss, you: a. Concealed or misrepresented any material fact or circumstance; b. Made incorrect statements or representations to [Ohio Casualty] with regard to any material fact or circumstance; or c. Engaged in fraudulent conduct; at any time of application or any time during the "policy period."

(Ohio Casualty Policy at 125).

Plaintiffs allege that on November 25, 2022, defendant Esty Goldman, an employee of insurance broker Hirschfeld "acting on behalf of, and under the instructions and/or supervision of Joel [Hirschfeld] and Hirschfeld [& Associates]," requested that ICC and SZO be added to both policies because the companies shared the "same owner and exposures." (Compl. ¶ 30). Ohio Security and Ohio Casualty effectuated a Policy Change Endorsement pursuant to Goldman's representation, adding ICC and SZO to both policies as of November 2, 2022 without requiring additional premiums. (R&R at 2–3). It was only after ICC and SZO were added as additional Named Insureds to both policies that Plaintiffs learned that Goldman's representation was incorrect and ICC and SZO did not share the same owner or exposures as ADA Island Group. (Id.). Plaintiffs then effectuated another Policy Change Endorsement rescinding the Policy Change Endorsement that had added ICC and SZO as Named Insureds to both policies. (Id.).

B. The Intervenor Policies

According to Intervenors USIC's and SNIC's Answer and Counterclaims, USIC issued an insurance policy to companies Tov Erasmus LLC ("Tov") and JIH Builders Group LLC

("JIH") covering construction projects with a policy period from March 24, 2022 until the later of September 24, 2024 or end of the insureds' underlying project. (Dkt. No. 28 ("Intervenor Answer") ¶ 154). SNIC issued an insurance policy to Empire State Dairy ("ESD") and Bushburg Builders, LLC ("Bushburg") with a policy period from November 30, 2022 until the later of November 30, 2024 or the end of the insureds' underlying construction project.

C. The Underlying Actions

Various claims were brought in New York State Supreme Court, Kings County, seeking coverage under the policies for injuries incurred at various construction sites. (Id. at 3). These actions are as follows:

- Sergio Miguel Franco Barzallo brought suit for injuries incurred on November 28, 2022 in the course of his employment at a construction project at 210 Clarkson Avenue, Brooklyn, New York (the "210 Clarkson Project"). (Id.). The defendants in the Barzallo action sought coverage under both Ohio Policies and impleaded ICC as a third-party defendant. (Compl. ¶¶ 44, 45).
- Wilmer Delgado brought an action for injuries incurred on September 15, 2022 at the 210 Clarkson Project. (R&R at 3). The defendants in the Delgado action sought coverage under the Ohio Policies and impleaded ICC as a third-party defendant. (Compl. ¶¶ 48, 49).
- Dionne Boissiere brought an action for injuries incurred on August 18, 2022 at a construction site at 2840 Atlantic Avenue, Brooklyn, New York (the "2840 Atlantic Project"). (R&R at 3). On July 7, 2023, ESD and Bushburg filed an Answer denying the allegations in the Boissiere Complaint and asserting a crossclaim against ICC for common law and contractual indemnification and contribution.

(Dkt. No. 20-8 ("Mot. to Intervene") at 6). Intervenors state, upon information and belief, that Bushburg and ESD tendered the defense and indemnification of ESD and Bushburg to Plaintiffs. (Id. at 12).

- Isabel Huaman brought an action against Tov and JIH[3] on November 4, 2022 for construction-related injuries suffered on September 29, 2022 at 150 Erasmus Street, Brooklyn, New York (the "150 Erasmus Project"). (R&R at 3; Mot. to Intervene at 9). On April 27, 2023 and August 11, 2023, Tov and JIH filed third-party complaints against both ICC and SZO, alleging they "entered into a contract to perform work at [the 150 Erasmus Project] and that pursuant to that contract [ICC and SZO were] obligated to supervise, direct, and control the work under the contract and was responsible for safety precautions." (Mot. to Intervene at 4–5). According to intervenors, USIC—through National Claim Services—tendered the defense and indemnification of the action to ICC, SZO, and Plaintiffs. (Id. at 10). Ohio Security and Ohio Casualty acknowledged receipt of the tender but denied any duty to defend or indemnify Tov or JIH because they did not qualify as insureds or additional insureds under the Ohio Policies. (Id.).
- Wuismar Ramos Martinez filed suit for injuries incurred on August 25, 2022 at the 210 Clarkson Project. (R&R at 3). Defendants in that action sought coverage under the Ohio Policies and impleaded ICC as a third-party defendant. (Compl. ¶¶ 58, 59).

[3] Ms. Huaman also brought claims against Yatziv Corp. The parties do not plead any facts as to Yatziv Corp. and the Court therefore does not assume its relevance to this action.

- Eder Santos commenced an action against Tov[4] on November 8, 2022 for injuries incurred on September 22, 2022 at the 150 Erasmus Project. (R&R at 3). On October 17, 2023, Tov filed a third-party complaint against ICC, alleging that it "entered into a contract to perform work at [the 150 Erasmus Project] and that pursuant to that contract ICC was obligated to supervise, direct, and control the work under the contract and was responsible for safety precautions." (Mot. to Intervene at 5). According to Intervenors, the counsel USIC assigned to defend Tov tendered the defense and indemnification to ICC and to Plaintiffs. (Id. at 11). Plaintiffs denied any duty to defend or indemnify Tov because Tov did not qualify as a named insured or additional insured under the Ohio policies. (Id.). Intervenors claim that Plaintiffs offered to provide "courtesy defense" to ICC but did not ultimately provide the defense because ICC did not respond to the offer. (Id.). Plaintiffs did not respond to a request to provide a defense for Tov. (Id.).
- Luis Lira filed a lawsuit for injuries incurred on September 23, 2022 at the 210 Clarkson Project. (R&R at 3). Defendants in that action sought coverage under the Ohio Policies and impleaded ICC as a third-party defendant. (Compl. ¶¶ 65, 66).
- NY Developers and 210 Clarkson commenced an action seeking coverage from Ohio Casualty and Ohio Security under both Ohio Policies for the Luis Lira action based on ICC's contractual obligations. (Compl. ¶¶ 67-68). Plaintiffs do not allege when this action was filed or provide details about the ICC contractual obligation at-issue in the litigation.

[4] Claims were also brought against Yatziv Corp.

- Robin Polonia filed suit for injuries suffered on November 23, 2022 at the 210 Clarkson Project. (R&R at 3). Defendants in that action impleaded ICC and sought coverage under both policies based on a contract with ICC. (Compl. ¶¶ 71, 72).

(collectively the "Underlying Actions"). [5]

According to Intervenors, the work at the 150 Erasmus Project, property owned by Tov, was governed by an agreement between ICC and JIH. (Mot. to Intervene at 6). Intervenors allege that general contractor JIH hired ICC as a subcontractor under a Subcontract Agreement. (Id.). The Subcontract Agreement provides that ICC was hired to perform excavation work and install a foundation and superstructure at the 150 Erasmus Project. (Dkt. No. 20-3 at 1). The Subcontract Agreement was signed by representatives of both JIH and ICC. (Id. at 2). In addition to the scope of work provisions, the Subcontract Agreement included an agreement that ICC would maintain liability insurance and additional insured coverage on a primary and non-contributory basis and naming Tov and JIH as named insureds. (Id. at 6 § 2). The Subcontract Agreement also provided that ICC would defend, indemnify, and hold harmless Tov and JIH. (Id. at 6 § 1). Intervenors also allege on information and belief that ICC entered a similar subcontract with Bushburg for the work conducted at the 2840 Atlantic Project which also required ICC to defend and indemnify Bushburg and ESD and to provide insurance coverage for them. (Mot. to Intervene at 7).

In the present action, Plaintiffs argue that but for Goldman's misrepresentations, Plaintiffs would not have added ICC and SZO as Named Insureds to the policies, would not have found

[5] In the Second Motion for Default Judgment, but not in the Complaint, Plaintiffs state for the first time that they were also named as defendants in another case, Oscar Lusluisa Alpapucho v. 210 Clarkson Propco LLC et al., Index No. 522040/2022. (Second Mot. for Default Judgment at 4). Plaintiffs submitted a declaration from Tiffany Channel, Senior Claims Resolution Analyst for Plaintiffs, in support of the Second Motion for Default Judgment which states that Plaintiffs and ICC were impleaded as third-party defendants in the Alpapucho action. (Dkt. No. 34-1).

themselves named as defendants in the action brought by NY Developers and 210 Clarkson, and would not have been involved as the purported insurers in the Underlying Actions. (Second Mot. for Default Judgment at 7). Plaintiffs allege that they incurred $205,850.75 in damages by defending themselves and indemnifying ICC and SZO for defending the Underlying Actions. (Id. at 4).

## II. Procedural History

### A. The First Motion for Default Judgment

On May 9, 2024, Plaintiffs filed the Complaint. The Complaint was served on defendants ADA Island Group, Hirschfeld & Associates, ICC, and Island Construction, through service upon the New York Secretary of State on May 22, 2024, setting the deadline for those defendants to answer or otherwise respond to the Complaint as June 21, 2024. (R&R at 4–5). Defendant Esty Goldman, an employee of Hirschfeld & Associates and Joel Hirschfeld, the principal broker and officer of Hirschfeld & Associates, were served on May 23, 2024 at the Hirschfeld & Associates office located at 496 Broadway, Brooklyn, New York 11211 by delivering the Complaint and Summons to a manager and, subsequently, by mailing the Complaint and Summons to Defendants' office location. (Dkt. Nos. 13 and 14). Defendants Goldman and Hirschfeld therefore had a corresponding answer deadline of June 13, 2024.

When Defendants failed to respond to the Complaint, Plaintiffs requested a Certificate of Default. (Dkt. No. 15). The Clerk of Court entered default on July 31, 2024 as to all Defendants. (Dkt. No. 17). On November 8, 2024, Plaintiffs filed their first Motion for Default Judgment. (Dkt. No. 19). However, on December 14, 2024, USIC and SNIC filed a Motion to Intervene in this litigation, seeking to resolve "whether Plaintiffs should be relieved of their obligations to provide coverage to their Named Insureds and their putative additional insureds."

(Dkt. No. 20-8 ("Mot. to Intervene") at 1). The Intervenors' challenge the rescission of the Policy Change Endorsement that added ICC and SZO as additional Named Insureds on the Ohio Policies. (Id. at 1).

On August 18, 2025, Judge Pollak issued a Report and Recommendation, explaining that "[a]side from any questions as to whether the allegations in the Complaint against defendants are sufficient to state a plausible claim for liability, there is an open question as to whether the intervenors will be allowed to interpose potential defenses to plaintiffs' claims that would have a direct impact on any determination of liability and potential damages with respect to the defaulting defendants in this case." (R&R at 7). Accordingly, Judge Pollak found that the Motion for Default Judgment was premature, and she recommended denying Plaintiffs' First Motion for Default Judgment without prejudice while the District Court decided the Motion to Intervene. (Id. at 8).

B. The Motion to Intervene

The District Court granted the Motion to Intervene on August 19, 2025. (Dkt. No. 27). In that Order, the Honorable Ann M. Donnelly granted permissive intervention after finding that, although the Intervenors could bring a separate action to resolve whether Plaintiffs owe coverage in the respective Underlying Actions even if default judgment were entered against ICC and SZO, "[b]oth the plaintiffs and the intervenors seek declarations about the plaintiffs' coverage obligations under the same policies in the same underlying actions." (Id. at 19–20). Judge Donnelly therefore found that the issues should be resolved in a single action as a matter of judicial efficiency. (Id.). In allowing the intervention, Judge Donnelly dismissed the First Motion for Default Judgment and, consequently, mooted Judge Pollak's Report and Recommendation recommending denying default judgment. (Id. at 21 n. 8).

Judge Donnelly did not, however, find that the Intervenors had an interest sufficiently direct, substantial, and legally protectable to warrant intervention as of right under Federal Rule of Civil Procedure 24(a)(2). (Id. at 17). The District Court held that Intervenors' "interest is not automatically implicated by the plaintiffs' claims, because even if the Court were to find that the plaintiffs do not owe coverage to ICC [or SZO], a court could nevertheless find that the plaintiffs still owe coverage to the intervenors' insureds." (Id.). Therefore, "[t]he intervenors' coverage obligations for their insureds are…not necessarily shaped by the Court's determination in this action." (Id. at 18) (quotation, citations, and alteration omitted).

C. The Second Motion for Default Judgment

On August 20, 2025, Intervenors filed their Answer to the Complaint (Dkt. No. 28), seeking declaratory relief and monetary damages against Plaintiffs incurred in the defense of the Underlying Actions. On October 8, 2025, Plaintiffs filed a combined Second Motion for Default Judgment and Motion to Sever. The Motion seeks to sever the first and second claims in the Complaint—the claims related to the Esty Goldman representations—from the remaining claim for declaratory relief regarding Plaintiffs' coverage responsibilities regarding ICC and SZO in the Underlying Actions. (Second Mot. for Default Judgment at 1). The Motion seeks monetary damages in the amount of $205,850.75 for costs arising out of defending the Underlying Actions, declaratory judgment that Defendants are required to reimburse Plaintiffs for the costs that have and will continue to accrue in connection with the defense of the Underlying Actions, and attorneys' fees and costs arising from claims for coverage or claims that ICC and SZO qualify as Named Insureds on the Ohio Policies. (Id.). Plaintiffs served this Second Motion and exhibits on all Defendants on October 8, 2025 via U.S. Mail. (Dkt. No. 35-17).[6]

[6] Plaintiffs did not provide any exhibits relating to service of the First Motion for Default Judgment. The only evidence provided suggesting that any of the Defendants were aware of the First Motion for Default Judgment is a

On November 5, 2025, Intervenors filed an opposition to Plaintiffs' motion, stating that the motion should be denied as the allegations giving rise to the fraud claims "are inextricably intertwined with the remaining claims for coverage under the [Plaintiffs'] Policies." (Dkt. No. 36-5 ("Intervenors' Opp.") at 1). Intervenors point out that the District Court already determined that the Intervenors' claims for coverage for their insureds as additional insureds under the Ohio Policies share a common question of law or fact with Plaintiffs' claims and that judicial efficiency would be facilitated by resolving the parties' claims through a single action. (Id. at 2). They argue that "[i]t is beyond dispute that the Fraud Claims and the Coverage Claims are premised on the same alleged misrepresentation in the request to add ICC and SZO as additional Named Insureds on Plaintiffs' Policies" and any ruling on the fraud claims "will necessarily involve a determination [of] facts and/or the sufficiency of Plaintiffs' claims with respect to the alleged misrepresentation that may also have an effect on the Coverage Claims, including Intervenors' claims for additional insured coverage." (Id.).

Intervenors also argue that potentially meritorious defenses exist which should be explored through discovery. (Id. at 3). These potential defenses include a waiver of rights under the Ohio Policies and a ratification of the Goldman misrepresentation. (Id. at 16). Default Judgment, according to Intervenors, is also inappropriate because Plaintiffs have failed to state a claim for fraud and because the fraud claim is essentially a recission claim dressed up as a fraud claim. (Id. at 5, 16).

Plaintiffs filed a reply in support of their Motion, arguing the fraud claims have no common questions of law or fact with the Intervenors' counterclaims and that Plaintiffs have not alleged that the fraud allegations are a basis for disclaiming coverage to Intervenors' insureds.

---

July 9, 2022 email from Plaintiffs' counsel to Joel Hirschfeld and Esty Goldman warning that Plaintiffs would file for default the following day. (See Dkt. No. 35-51).

(Dkt. No. 37 at 1). Instead, Plaintiffs insist that none of their claims would affect coverage for Tov, JIH, ESD, or Bushburg. (Id.). Plaintiffs also assert that Intervenors lack standing to assert coverage claims regarding Plaintiffs' coverage for ICC and SZO. (Id. at 2).

The District Court set a default judgment briefing schedule on September 10, 2025, setting an October 8, 2025 deadline for Plaintiffs to move for default judgment; a November 5, 2025 deadline for Intervenors to respond; and a November 5, 2025 deadline for Plaintiffs' reply brief. (Electronic Order, dated September 10, 2025). The Order did not specify a deadline for Defendants to respond to the motion. Defendants ICC and SZO filed an opposition brief to Defendants' motion on February 19, 2026. (Dkt. No. 40 ("Defs.' Opp.")). This was defendants' first filing in this action. Defendants ICC and SZO argue that Plaintiffs fail to allege that ICC and SZO willfully defaulted, that Defendants lack a meritorious defense, or that denial of the motion would result in prejudice to Plaintiffs. (Id. at 1). They also argue that the fraud allegations in the Complaint fail to meet the heightened pleading standards required for fraud claims. (Id.). In support of their opposition, ICC and SZO submitted the declaration of their Chief Executive Officer, Chester Meisels. Meisels asserts that the companies believed "the litigation was covered by the parties' liability insurance policy, and that no action was required." (Dkt. No. 40-1 ¶ 3). Once ICC and SZO learned that the second motion for default judgment was filed, Mr. Meisel asserts that the companies "immediately requested that counsel appear and oppose the motion for default judgment." (Id. ¶ 4).

D. Motion to Strike

Plaintiffs filed a Motion to Strike ICC and SZO's opposition to the pending Second Motion for Default Judgment on February 19, 2026, arguing that the opposition should be

rejected as tardy or, alternatively, that Plaintiffs should be afforded 14 days to respond. (Dkt. No. 41 ("Mot. to Strike")).

Plaintiffs argue that ICC and SZO did not dispute being served in May 2024. (Mot. to Strike at 2). Instead, ICC and SZO waited 18 months to get involved in this litigation, purportedly because they believed they were represented by their insurer—a claim Plaintiffs argue is unsupported. (Id.). Plaintiffs argue that this "smell[s] like [ICC and SZO] are attempting to commit fraud on the court [the] same way they committed fraud on [Plaintiffs]," and that, given the fraud claims, "no reasonable business person would believe that these claims could be covered by insurance." (Id.).

ICC and SZO filed an opposition to the motion to strike on March 5, 2026, acknowledging that their default judgment opposition was late, but asserting that they provided a reasonable excuse for the delay and that the delay would not prejudice Plaintiffs because the proceedings are at an early stage and discovery has not commenced. (Dkt. No. 44 at 1–2). They also argue that accepting the opposition serves judicial economy by avoiding a future motion to set aside a default judgment. (Id. at 1).

## DISCUSSION

### I. Plaintiffs' Motion to Strike

There are several avenues by which a Court can strike an untimely filing other than pleadings. The first falls under the Court's "inherent authority to set and enforce deadlines for the management of litigation." Jamison v. Fischer, No. 11 CV 4697, 2012 WL 4767173, at *6 (S.D.N.Y. Sept. 27, 2012). "'Motions to strike are generally disfavored and will be denied unless it is clear that under no circumstances could the defense succeed.'" Azikiwe v. Nigeria Airways

Ltd., No. 03 CV 6387, 2006 WL 2224450, at *1 (E.D.N.Y. July 31, 2006) (quoting Connell v. City of New York, 230 F. Supp. 2d 432, 438 (S.D.N.Y.2002)).

The Court also "has power under Rule 16 of the Federal Rules of Civil Procedure…to impose sanctions in respect of conduct violative of scheduling orders and wasteful of the time of the Court and opposing counsel." Advanced Analytics, Inc. v. Citigroup Glob. Mkts., Inc., 301 F.R.D. 31, 35 (S.D.N.Y. 2014) (internal citation omitted). Rule 6 also permits district courts to extend the time to comply with missed deadlines for good cause where the failure to act was due to "excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). In determining whether to grant such an extension, "a court may take into account 'all relevant circumstances surrounding the party's delay, including prejudice to the other party, the reason for the delay, its duration, and whether the movant acted in good faith.'" Olsen v. Sherry Netherland, Inc., No. 20 CV 103, 2022 WL 4592999, at *11 (S.D.N.Y. Sept. 30, 2022) (alteration omitted) (quoting Raymond v. Int'l Bus. Machines Corp., 148 F.3d 63, 66 (2d Cir. 1998)), aff'd, No. 24-2906, 2026 WL 682341 (2d Cir. Mar. 11, 2026).

Here, ICC and SZO filed their opposition on February 19, 2026, more than three months after the end of the District Court's briefing schedule, which did not include a deadline for Defendants to file their opposition. ICC and SZO have submitted a declaration from their CEO offering some justification for their tardy opposition – that the companies believed they were being represented by their insurance carrier and that, once they learned of the Plaintiffs' motion for default judgment they "immediately requested that counsel appear." The three-month gap between service of the Second Motion for Default Judgment and the filing of ICC and SZO's opposition brief does not reflect "immediate" action. However, the preference for resolving matters on the merits is strong and the interest of judicial economy would be better served by

hearing ICC and SZO's opposition to the Second Motion for Default Judgment rather than being faced with a future motion to vacate a default judgment. In consequence, the Court respectfully recommends excusing the delay and denying Plaintiffs' Motion to Strike. The Court does not find that a reply to ICC and SZO's opposition is necessary because their opposition did not alter the Court's conclusion that all the claims brought should be addressed in a single action. The Court therefore respectfully recommends denying Plaintiffs' alternative request for leave to file such a brief.

II. Plaintiffs' Motion to Sever

District courts "may at any time, on just terms…sever any claim against a party." Fed. R. Civ. P. 21. "The decision whether to grant a severance motion is committed to the sound discretion of the trial court." State of N.Y. v. Hendrickson Bros., Inc., 840 F.2d 1065, 1082 (2d Cir. 1988)). Courts consider several factors in determining the appropriateness of severance:

> (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims.

Medmix Switzerland AG v. Kettenbach GmbH & Co. KG, No. 21 CV 6613, 2024 WL 1973365, at *5 (E.D.N.Y. May 3, 2024) (citing Oram v. SoulCycle LLC, 979 F. Supp. 2d 498, 502–03 (S.D.N.Y. 2013)). Severance should only be employed in "exceptional circumstances." Oram, 979 F. Supp. 2d at 503 (internal quotation omitted).

Here, Plaintiffs seek to sever their first two claims, which relate to the alleged misrepresentations that led to the Policy Change Endorsement that added ICC and SZO as additional Named Insureds on the Ohio Policies, from the third cause of action seeking a

declaratory judgment regarding Plaintiffs' rights and responsibilities with respect to insurance coverage over ICC and SZO. Plaintiffs insist that "whether the Defaulting Defendants owe [Plaintiffs] money both already accrued and those in the future for the fraudulent statements, and…whether coverage exists under the Ohio Security Policy and/or the Ohio Casualty Policy for the Underlying Actions, do not arise out of the same transaction or occurrence." (Mot. at 12).

The Court disagrees. The three claims are inextricably intertwined. Whether coverage exists under the Ohio Policies for the Underlying Actions—Plaintiffs' third claim—would not be an issue before this Court but for the alleged misrepresentations in the first two claims for relief. The first two claims and the third claim arise out of the same transaction or occurrence and share common issues of fact. These factors weigh against severance.

The Court also finds that judicial economy is facilitated by adjudicating all three claims together. The same witnesses and documentary proof will likely be necessary to prove all three claims and retracing the same depositions and document productions after severance would not be efficient. Severing the first two claims and forcing discovery covering common factual issues to proceed on separate two tracks would strain judicial and party resources.

Plaintiffs argue that denying severance would prejudice Plaintiffs by delaying default judgment and that no party would suffer prejudice if severance were granted. (Mot. at 14). Again, the Court disagrees. First, Plaintiffs are seeking the reimbursement of both present and future costs incurred in defending the Underlying Actions. These costs will continue to accrue regardless of whether the Court severs Plaintiffs' claims. The District Court was not persuaded by Plaintiffs' argument that they would be unduly prejudiced by delaying default judgment because there is a "strong public policy preference for resolving disputes on the merits, rather than by default judgments." (Dkt. No. 27 at 14). The delay therefore causes no significant

prejudice to Plaintiffs. Meanwhile, severing claims would require ICC and SZO to defend these claims on two different fronts—in this case and in the severed action.

For these reasons, the Court respectfully recommends that the District Court deny Plaintiffs' Motion to Sever.

## III. Motion for Default Judgment

### A. Default Should Be Vacated as to ICC and SZO

Default judgment is governed by Federal Rule of Civil Procedure 55, which establishes a two-step process for the entry of default judgment: first, the Clerk of Court enters default against a party who fails to defend, and second, the Court enters default judgment. Fed. R. Civ. P. 55(a)-(b). See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95–96 (2d Cir. 1993). At the second step, "the Court may, on plaintiff[s'] motion, enter a default judgment if liability is established as a matter of law when the factual allegations of the complaint are taken as true." Bricklayers & Allied Craftworkers Lc. 2 v. Moulton Masonry & Constr., LLC, 779 F.3d 182, 187 (2d Cir. 2015).

Where, as here, however, "a defendant opposes a motion for default judgment, the Court may treat the motion as one to set aside entry of default despite the absence of a formal motion under [Rule] 55(c)." Windward Bora, LLC v. Weiss, 717 F. Supp. 3d 247, 260 (E.D.N.Y. 2024) (citing Meehan v. Snow, 652 F.2d 274, 276 (2d Cir. 1981) (treating defendants' opposition as a motion to set aside the entry of default)). Rule 55(c) provides that a court "may set aside an entry of default for good cause." The Court has discretion in evaluating good cause. Id. at 260. The "good cause" standard to set aside entry of default is lower than the rigorous "excusable neglect" standard necessary to set aside a default judgment. Kuklachev v. Gelfman, No. 08 CV

2214, 2009 WL 497576, at *2 n.4 (E.D.N.Y. Feb. 26, 2009), aff'd, 361 Fed. App'x 161 (2d Cir. 2009)).

When deciding a motion to vacate entry of default, "the court's determination is guided by three principal factors: '(1) whether the default was willful, (2) whether the defendant demonstrates the existence of a meritorious defense, and (3) whether, and to what extent, vacating the default will cause the nondefaulting party prejudice.'" Guthrie v. Rainbow Fencing Inc., 349 F.R.D. 55, 62 (E.D.N.Y. 2025) (quoting In re Orion HealthCorp, Inc., 95 F.4th 98, 104 (2d Cir. 2024)). This analysis is guided by the fact that "defaults are generally disfavored, so courts resolve doubts in favor of the defaulting party." Id. (quoting In re Orion HealthCorp, Inc., 95 F.4th at 104)). If the Court finds these factors weigh more heavily in favor of vacating default, "the presumption in favor of resolution on the merits requires that the court vacate the default," even if one factor weighs against vacating. Kuklachev, 2009 WL 497576, at *2 (citing Grant v. City of N.Y., 145 F.R.D. 325, 327 (S.D.N.Y. 1992)).

1. Willfulness

Willfulness, the most important factor, "looks to 'egregious or deliberate conduct,' and even 'grossly negligent' actions do not necessarily qualify" as willful. Guthrie, 349 F.R.D. at 68 (quoting United States v. Starling, 76 F.4th 92, 102 (2d Cir. 2023)). The egregious conduct must be "not satisfactorily explained." Pall Corp. v. Entegris, Inc., 249 F.R.D. 48, 55 (E.D.N.Y. 2008) (quoting Sec. & Exch. Comm'n v. McNulty, 137 F.3d 732, 738 (2d Cir. 1998)). Doubts as to willfulness are resolved in defendants' favor. Addison v. Reitman Blacktop, Inc., 272 F.R.D. 72, 77 (E.D.N.Y. 2010).

Courts have found willfulness where, for example, defendants evade service, Sec. & Exch. Comm'n v. Breed, No. 01 CV 7798, 2004 WL 1824358, at *8 (S.D.N.Y. Aug.13, 2004),

offer "flimsy" excuses for failure to comply with scheduling orders, and exhibit "incredible" failures to appear at pretrial conferences. McNulty, 137 F.3d at 738–39. Courts have also found willful defaults where a defendant had no rational good faith basis for believing their insurance carrier would defend them in an action but defaulted anyway. Jaramillo v. Colonial Construciton LLC, No. 07 CV 2142, 2008 WL 11438098, at *3–4 (E.D.N.Y. Sept. 16, 2008). On the other hand, Courts have found a lack of willfulness where, for example, a defendant had a good faith belief the case would settle without judicial intervention, Westchester Fire Ins. Co. v. Tyree Serv. Corp., 304 F.R.D. 111, 113 (E.D.N.Y. 2014), relied on advice from a state prosecutor that she could not yet make a claim, United States v. Starling, 76 F.4th 92, 102 (2d Cir. 2023), or had a reasonable belief he did not need to appear in the litigation because of a good faith belief that an insurer would be handling the matter. Nationwide Mut. Fire Ins. Co. v. Rankin, 199 F.R.D. 498, 504 (W.D.N.Y. 2001).

As discussed above, there was a three-month gap between service of the Second Motion for Default Judgment and ICC and SZO's appearance in this action and an almost twenty-month gap between the service of the initial Complaint and their appearance. ICC and SZO assert that when the companies first became aware of this lawsuit, they did not think any action was required because the action was covered by their liability insurance policy. Although Meisels does not state when ICC and SZO first became aware of this action, ICC and SZO have not challenged service or asserted that they were unaware of the action until learning of the Second Motion for Default Judgment. Nor do they claim whether they were aware of the first Motion for Default Judgment or provide any justification for their failure to respond to that Motion.[7]

[7] Plaintiff did not file a certificate of service stating that all documents in support of the first request for default judgment were served on the defaulting Defendants, as required by Local Rule 55.2(a)(3). Weighing all doubts in favor of ICC and SZO, it is possible that the First Motion for Default Judgment was not properly served on ICC and SZO.

The only evidence ICC and SZO offer to explain their delay is Mr. Meisel's declaration. Plaintiffs are unpersuaded by his explanation that ICC and SZO did not think action was required on their part because the matter would be handled by their liability insurance company. Nevertheless, when considering whether to vacate an entry of default, the Court must weigh doubts in Defendants' favor. Accordingly, the Court does not find the default was willful.

2. Meritorious Defenses

The second consideration requires "some evidence beyond conclusory denials" to support a meritorious defense. Enron Oil Corp., 10 F.3d at 98. The defense "need not be ultimately persuasive at this stage," but must be "good at law so as to give the factfinder some determination to make." Addison v. Reitman Blacktop, Inc., 272 F.R.D. 72, 81 (E.D.N.Y. 2010) (quoting Am. Alliance Ins. Co., Ltd. v. Eagle Ins. Co., 92 F.3d 57, 61 (2d Cir.1996)).

ICC and SZO have proffered several defenses, including an agency defense, arguing that ICC and SZO did not ratify or adopt any of the alleged misrepresentations to Plaintiffs. (Defs.' Opp. at 4). They also argue that Plaintiffs' allegations fall short of the heightened pleadings standard required by Rule 9 for fraud claims. (Id. at 1).

This Court therefore finds that ICC and SZO have presented enough to support the existence of meritorious defenses.

3. Prejudice

As discussed above, the costs Plaintiffs seek to recover will continue to accrue until the end of the Underlying Actions and, therefore, delaying judgment in this litigation until the parties can explore the merits of the claims would not cause significant prejudice. And any prejudice to Plaintiffs does not overcome the preference for resolving this dispute on the merits.

* * *

For these reasons, the Court respectfully recommends that the District Court vacate the entry of default against ICC and SZO. However, further delays may result in the imposition of sanctions, including a new entry of default and payment of fees incurred by Plaintiffs in the prosecution of both the present default judgment motion and future defaults.[8]

B. Default Judgment Against the Remaining Defaulting Defendants is Premature

Under Federal Rule of Civil Procedure 54(b), "[w] hen an action presents more than one claim for relief…or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." However, "[c]ourts have repeatedly denied '[e]ntry of default judgment in an action for declaratory relief where, as here, a non-defaulting…party's interests are intertwined with those of the defaulting party,' and entry of default judgment 'would prevent the non-defaulting…party from litigating its claims and thus cause great prejudice to that party.'" Hiscox Ins. Co. Inc. v. Cmnt LLC, No. 24 CV 8322, 2026 WL 873013, at *3 (E.D.N.Y. Mar. 30, 2026) (quoting Known Litig. Holdings, LLC v. Navigators Ins. Co., No. 12 CV 269, 2015 WL 13636078, at *2 (D. Conn. Feb. 11, 2015)). Courts have found this to be the case where default judgment would effectively void an insurance policy, requiring a named insured to be responsible for the entirety of an underlying suit's defense and indemnification. Id.

Default judgment is also premature where granting default judgment could result in inconsistent judgments. This can occur when a litigating defendant and a non-appearing

---

[8] See White Plains Hous. Auth. v. Getty Props. Corp., No. 13 CV 6282, 2017 WL 1498041 (S.D.N.Y. Apr. 25, 2017) (vacating default but warning counsel that further dilatory conduct may result in the imposition of sanctions including payment of fees incurred in seeking default judgment, opposing the motion to vacate, and addressing continuing defaults).

defendant raise similar or identical defenses. Fin. Servs. Vehicle Tr. v. Osmanaj, No. 22 CV 7491, 2023 WL 7000935, at *4 (E.D.N.Y. Aug. 15, 2023); Hunter v. Shanghai Huangzhou Elec. Appliance Mfg. Co., 505 F. Supp. 3d 137, 162 (N.D.N.Y. 2020) (denying summary judgment where "doing so would raise the specter of inconsistent judgments" because the defaulting defendants shared a similar defense to the litigating defendants).

Default judgment here is premature. The risk of inconsistent judgments is apparent where ICC, SZO, and the Intervenors may all rely on similar defenses.[9] Granting default judgment now would also run the risk of creating inconsistent judgments as to the coverage determinations pertaining to the defaulting and litigating Defendants. Moreover, if the Court were to grant default judgment against the remaining defaulting Defendants, the Intervenors would be left holding the bag for the entirety of the defense and indemnification of the Underlying Actions. Thus, the Court respectfully recommends denying Plaintiffs' Second Motion for Default Judgment.

## CONCLUSION

For the reasons set forth above, the Court respectfully recommends that the District Court: (1) deny Plaintiffs' Motion to Strike, including Plaintiffs' request for leave to file a reply in support of its Second Motion for Default Judgment; (2) deny Plaintiffs' Motion to Sever; (3) construe Defendants' Opposition to Plaintiff's Second Motion for Default Judgment as a motion to vacate default; (4) vacate default against Defendants ICC and SZO; and (5) deny Plaintiffs' Second Motion for Default Judgment without prejudice.

[9] For example, ICC and SZO's defenses and the Intervenor's defenses each rely on whether the Policy Change Endorsements were effective and whether Plaintiffs properly rescinded coverage. Granting judgment against ICC and SZO while later potentially granting judgment in favor of the Intervenors could result in inconsistent rulings on the same defenses.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also Fed. R. Civ. P. 6(a) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the district court's order. See, e.g., Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008).

Plaintiff is Ordered to serve this Report and Recommendation on Defendants Esty Goldman, Joel Hirschfeld, Hirschfeld & Associates, ADA Island Construction Corp., Island Construction Corp. by **August 28, 2026** and file proof of service immediately thereafter.

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
August 27, 2026

/s/ *Peggy Cross-Goldenberg*
Peggy Cross-Goldenberg
United States Magistrate Judge
Eastern District of New York